| 53 | 531 |
| 58 | 602 |
| 62 | 274 |
| 62 | 275 |
| 53 | 531 |
| 69 | 476 |

## THE PEOPLE v. CHARLES BROWN.

*Rape—Res gestæ—Conduct of victim—Hypothetical question.*

1. In a prosecution for rape it is proper to show by the victim's mother that two days after its commission her daughter's appearance and behavior were such that she insisted on knowing what the matter was, and the daughter told her.

2. Long hypothetical questions reciting a great number of facts so presented as to require the witness to determine questions that should be left to the jury, and so long that neither jury nor witness can remember and take account of all the elements presented, are very objectionable.

3. The Michigan statutes defining rape make medical testimony for the most part unnecessary in proving it.

4. Instructions upon the law must be laid before the jury by the judge; but the error of allowing a witness to be asked questions which

require him to state legal conclusions will not require a reversal if the conclusions are legally correct.

5. It is bad practice to subdivide a charge and except to single passages as if they were independent.

Error to Wayne.   (Jennison, J.)   April 18.—April 30.

RAPE.   Respondent brings error.   Affirmed.

*Edward S. Grece* and *Sylvester Larned* for respondent appellant.   It is error in a rape case to permit a witness to state *what* the prosecutrix said against the defendant concerning the commission of the offense; the witness may state that the prosecutrix "made complaint," but no more; and it has been held error to permit one to state what the prosecutrix said the name of the assaulting party was: Whart. Crim. Ev. § 492; 3 Greenl. Ev. § 213; 1 Whart. Cr. L. § 566; *Rex v. Clarke* 2 Stark. 241; *Reg. v. Megson* 9 C. & P. 420; *Reg. v. Guttridges* id. 471; *People v. McGee* 1 Den. 18; *State v. Niles* 47 Vt. 82; *Baccio v. People* 41 N. Y. 265; *Thompson v. State* 38 Ind. 39; *Weldon v. State* 32 Ind. 81; *State v. Richards* 33 Ia. 420; *State v. Emeigh* 18 Ia. 122; *Com. v. Gallagher* 4 Penn. L. J. 511; *Brogy v. Com.* 10 Grat. 722; *Lacy v. State* 45 Ala. 80; *State v. Jones* 61 Mo. 232; *Stephen v. State* 11 Ga. 225; *Reg. v. Nicholas* 2 C. & K. 246; *People v. Graham* 21 Cal. 261; *State v. Knapp* 45 N. H. 148; *State v. Ivins* 36 N. J. L. 233; in Ohio proof of the victim's statements has been admitted, not "to establish the substantial facts," but only to "corroborate or contradict her statements made in court:" *Johnson v. State* 17 Ohio 593; *Burt v. State* 23 Ohio St. 400; *McCombs v. State* 8 Ohio St. 646; *Laughlin v. State* 18 Ohio 99; but it has been held that what the prosecutrix said "immediately after" the assault as to the commission of the offense might be admitted as a part of the res gestæ: *McMath v. State* 55 Ga. 303; *Lacy v. State* 45 Ala. 80; *McCombs v. State* 8 Ohio St. 646; *State v. DeWolf* 8 Conn. 93; *People v. Lynch* 29 Mich. 274; *Maillet v. People* 42 Mich. 262; questions that call for an opinion about matters that the jury must of necessity know just as much about as the witness, or ask for an opinion from the witness on matters of law and fact, are improper: *Daniels v. Mosher* 2 Mich. 186; *Evans v. People* 12 Mich. 34; *Beurmann v. Van Buren* 44 Mich. 496; *People v. Smith* 9 Mich. 193; *Kempsey v. McGinniss* 21 Mich. 137; *People v. Finley* 38 Mich. 482; *Van Deusen v. Newcomer* 40 Mich. 90, 120;

*People v. Morrigan* 29 Mich. 47; *Cook v. State* 24 N. J. L.
843; 1 Greenl. Ev. § 440; *White v. Ballou* 8 Allen 408;
*Woodin v. People* 1 Park Cr. 464; 1 Whart. Ev. § 436; Roscoe's Crim. Ev. 179; *Luning v. State* 2 Pinney 215.

Attorney General *Jacob J. Van Riper* for the People.
Evidence in a rape case that the victim did not make complaint of the offense until Wednesday following the Monday
on which it occurred, will not be rejected on that account, as
there is no rule as to the time within which it should be
made in order to its admission, and the delay may be considered by the jury as affecting credibility of the witness:
*Turner v. People* 33 Mich. 383; *Maillet v. People* 42 Mich.
262; *McCombs v. State* 8 Ohio St. 643; *Strang v. People* 24
Mich. 1; so also what was said by complainant at the time
she told her mother is admissible: *Brown v. People* 36 Mich.
203; *Maillet v. People* 42 Mich. 262.

CAMPBELL, J. Respondent was convicted of rape. The
offense, if commited, was done while respondent had the
young girl, who was the subject of it, apart in her
chamber for the purpose of examination and treatment for
some female difficulty. According to her story, he used
locally some articles which, it is supposed and testified, might
prevent some significant appearances and consequences, which
would otherwise have been likely to become manifest. Her
account, if true, made out a clear and aggravated case. He,
in his sworn statements, denied any sexual intercourse of any
kind. There was nothing in the case which could relieve
the jury from believing one or the other of these witnesses
upon the question of intercourse, and it is difficult to see how
any complicated issues could arise. In this conflict the circumstantial evidence became essential in aiding the jury to
determine which was to be substantially credited, and upon
this there was therefore a contest upon the trial, and there
were facts open to comment. There was the testimony of
physicians who made a personal examination shortly after,
which, if true, made it reasonably certain that she had been
violated by some one; and, so far as the record shows, there
was no testimony pointing in any other direction as to the
person who did the act. It appears, however, that other wit-

nesses, sworn as medical experts, are claimed to have given a different view of the meaning of the appearances. All this was before the jury, and no points are made upon it on the law. But the radical differences between the chief witnesses on the main fact were those on which all the other testimony was meant to bear.

Objection was made to the testimony of the mother in showing that on the next day but one after the occurrences the appearance and behavior of the girl were such that she insisted on knowing what was the matter, and the daughter told her what had occurred. We think this was admissible under the previous rulings of this Court, referred to on the argument. In all such cases it is desirable to know how soon or in what way the outraged person complains. Its force is for the jury. In the present case the mother had directed, if not compelled, the daughter to submit to medical treatment of a necessarily unpleasant nature, and had been induced to leave the room. It was after an interview with respondent that the mother had herself caused, and in connection with appearances, and a shame-faced look in the child, that she made the inquiry, which it was certainly her duty to make, and which it was as proper to show. The jury were not, so far as we can see, allowed to be misled into giving this testimony any further force than legally belonged to it. It was, to a certain extent, a part of the transaction or res gestæ, which, in rape cases, according to most of the authorities, would include such accounts of the recent crime as are to be expected from the injured woman. We do not think the ruling was erroneous.

Two further objections to answers required by the court to be given by a medical witness to certain interrogatories require more attention, because they were not such as he could properly be called on to answer, and he strongly objected to them as not involving medical science. That they were improper is too manifest to bear discussion. But it is not so clear that the answers worked any legal wrong.

One of them occupies two full printed pages, and asks the doctor whether, in his opinion, the facts assumed in the

hypothesis presented would constitute rape. The other related to some rather metaphysical complications which the doctor very sensibly intimated could in no way affect his answer to the other question, and to this we see no possible legal objection.

The long question, however, assumed as facts in the hypothesis all that the girl had shown in her narrative of the offense, including all the circumstances attending the respondent's visit, and his previous preparations and subsequent appearances. It was very properly objected by the witness that this called on him for an opinion which would not be a medical opinion.

The case indicates that this was not the only similar instance, and the practice of presenting such hypotheses by counsel to witnesses is worthy of strong condemnation. In most cases it asks a witness to usurp the functions of the jury, and may often lead them to disregard their own functions and accept conclusions which they should form for themselves. But it may also be observed that another result, even where the question involves science, is nearly as dangerous. No opinion on a scientific question can be of any service to a jury, either in giving them direct knowledge, or in enabling them to compare opinions, unless they know just what elements enter into the opinion. Human memory is not usually so tenacious that a question of such great length, involving many distinct facts or elements, can be fully remembered by a witness to whom it is propounded on the stand, and it is practically unlikely, if not impossible, that when he answers it he answers it in view of all these separate elements. He necessarily answers it by assuming for himself what is material and what is immaterial, and if he were at the same time to show what matters he has eliminated, there could be no difficulty in ascertaining what is needed, and testing all witnesses by the same standard. But where this process is repeated by different witnesses, they may not all act on the same basis, and conflicts of opinion will appear, which are more apparent than real. In science, as everywhere else, all inquiries should be brief and

clear enough to leave out all rubbish and direct attention to tangible results. In regard to such a dispute as arose here, the strictly medical inquiries were very few and simple, and if required to be made in a simple form would have been more serviceable. Here they were only necessary by way of corroboration, for no medical testimony can usually be needed, under our present statutes, to ascertain whether rape has been committed. In the present case the witness was called on to usurp the functions of the court and not of the jury. His opinion turned out, when given, to be correct upon the law, and we cannot reverse a judgment because the law has been rightly laid before the jury, by any one. The error was cured by the answer. But it is better that the law should be laid down solely by the legal instructor of the jury.

The remaining questions relate to the charge. It was very long, and most of the errors assigned are due to this, as various parts have been dwelt on as indicating misleading directions. There were no requests denied that were not, so far as they were proper at all, covered by the charge as given. The essence of the exceptions is that it was an argumentative charge, bearing very strongly against the respondent. We do not, however, think that it is quite fair to select out single passages and deal with them as if they were independent. The method of excepting was to cut up this voluminous charge into paragraphs, such as counsel chose to divide up, and treat each of those so-called paragraphs, although sometimes not entirely relating to one part of the subject, as a minor and distinct charge. Even in this way the exception referring to such a paragraph frequently leaves us in doubt just what was aimed at. But, although this is bad practice, we have nevertheless looked into the whole charge, and are disposed to consider all that was urged on the argument as affecting it. We have done so, because the charge itself is much beyond the ordinary scope of charges usually given in cases involving so short an inquiry. We are obliged to see, practically, that the only real dispute was whether the girl told the truth. About this simple issue there was made up

a great entanglement of discussion on the trial, and the judge seems to have thought it proper to discuss all of the various suggestions made on both sides, so. as to present to the jury all the conflicting views. This is all we can find in considering these exceptions; and while we think such a re-statement of the discussion is very likely to confound the jury, we do not see any reason in this record to infer that they did not have the case fairly presented. The judge took pains from time to time to explain that it was the business of the jury to form their own conclusions, and to warn them of the necessity of doing no injustice, and of not convicting if there was any reasonable doubt. We do not think that in his comments on the enormity of the offense, if committed, and on the relative positions of the parties, he exceeded legal limits or inculcated any unwholesome views. We do not think the cause of decency would be subserved by our spreading upon our reports the particulars of the offense as turned over in various ways before the jury. We think it sufficient to say that while from the great number of the rulings we have found it necessary to consider the case with more obstacles in the way of comparison than we should have liked, we do not discover that any legal wrong has been done, and

We affirm the judgment.

The other Justices concurred.